**George Arlin LILLARD, Appellant,**

v.

**STATE of Texas, Appellee.**

Nos. 11–96–00330–CR to 11–96–00332–CR.

Court of Appeals of Texas, Eastland.

May 13, 1999.

Rehearing Overruled July 15, 1999.

Jeffrey A. Kearney, Greg Westfall, Kearney & Westfall, Attorneys at Law, Fort Worth, for appellant.

Jerry D. Ray, District Attorney, Palo Pinto, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

1. Appeal No. 11–96–00330–CR.

2. Appeal No. 11–96–00331–CR.

3. Appeal No. 11–96–00332–CR.

4. The possession of marihuana was a state jail felony with automatic community supervision

## OPINION

TERRY McCALL, Justice.

The jury convicted appellant of possession with intent to deliver diazepam,[1] possession with intent to deliver methamphetamine,[2] and possession of marihuana.[3] The jury assessed his punishment at confinement for 20 years, confinement for 70 years, and confinement for 2 years,[4] respectively. We affirm.

### Background Facts

Appellant does not challenge the sufficiency of the evidence. The record shows that, on November 11, 1995, officers from the Cross Timbers Drug Task Force executed a search warrant at appellant's home and shop. The search warrant was based, in large part, on information from a confidential informant. The officers found 16.49 grams of methamphetamine, 190.74 grams of marihuana, and 1,852 tablets of diazepam. The search also revealed several thousand dollars in cash, firearms, and some drug paraphernalia. Following his arrest that day, appellant gave a written statement to the police in which he admitted ownership of the drugs found on the premises. During the trial, one witness testified that appellant sold him some methamphetamine; another witness testified that she and others had "done lines" of methamphetamine at appellant's house and shop. Neither side put on additional evidence during the punishment phase of the trial.

### Pretrial and Trial Proceedings

Appellant filed a pretrial motion to suppress evidence seized as a result of the search of his premises, claiming that no probable cause existed for the magistrate to issue the search warrant. Appellant

of any sentence. The trial court probated the sentence for five years. The jury fined appellant $10,000 in both the diazepam and methamphetamine cases and fined him $2,000 in the marihuana case.

also filed a motion to discover the identity of the confidential informant on the grounds that the informant could offer testimony necessary to a determination of appellant's guilt or innocence (under the former TEX.R.CRIM.EVID. 508(c)(2) exception to the general confidentiality privilege) and that the informant's information was not reasonably reliable or credible (under the former TEX.R.CRIM.EVID. 508(c)(3) exception to the general confidentiality privilege).

The trial court entered a written order denying appellant's motion to discover the informant's identity but did not make a pretrial ruling on appellant's motion to suppress. The record indicates that the trial court announced prior to trial that it would take up the motion to suppress during trial, but there is no written order or other record of the court's exact statement to that effect.[5]

Both parties proceeded as if the issue of "probable cause" would be submitted to the jury. At trial, the State's first witness was the magistrate who issued the search warrant. Appellant did not object to the magistrate's testifying about his determination of probable cause, and the State conducted its direct examination of the magistrate without any objections by appellant to the questions or answers. Appellant then cross-examined the magistrate concerning his procedure for issuing warrants in general, and his procedure for issuing this warrant in particular. The magistrate's testimony revealed the existence of the confidential informant. The State called as its second witness Officer Rodney Price, the officer who obtained and executed the search warrant. Officer Price also testified about using the confidential informant to establish probable cause.

During Officer Price's testimony, appellant asked the court to hear his motion to suppress outside the jury's presence. The court dismissed the jury, and appellant recalled the magistrate as his first witness on the motion to suppress. The magistrate could not be located. The court then terminated the hearing, stating that the magistrate had been excused earlier and that the jury was waiting.

After the trial court refused to hold the separate suppression hearing, appellant objected to the refusal and requested a ruling on probable cause. The trial court noted that the affidavit, search warrant, and return had already been admitted and ruled that probable cause existed and that the evidence seized during the search was admissible.

After the State rested, appellant renewed his motion to discover the informant's identity. The court again denied the motion.

### Opening Statement by State

■ Appellant argues in his first point that the trial court erred by overruling his objections to the prosecutor's opening statement:

[PROSECUTOR]: The evidence will show that in the time span that covers approximately the span of within seventy-two hours . . . the confidential informant had been at the residence of [appellant]. . . . And that the informant saw quantities of controlled substance . . . and saw it in the possession of [appellant].

[Discussion about hearing the motion to suppress outside the jury's presence ultimately rejected by the trial court.]

[PROSECUTOR]: Well, it was my understanding, Your Honor, that the Court ruled that these issues would be tried at the time of trial -

THE COURT: That's exactly what the Court ruled. (Emphasis added)

---

5. The record shows the following exchange which may account for the State's calling the magistrate as its first witness:

THE COURT: Well, when I stated before—and I offered you an opportunity to present your motions over thirty days before you finally did, and that was part of the reason for my ruling. . . . *We can submit the issue to the jury.* I will rule on it as they are offered during the trial.

[DEFENSE COUNSEL]: Your Honor ... we're going to object because it appears that there's an introduction of hearsay before the jury in the opening statement which the State has represented—or has not put us on any notice that they're going to be able to prove. They haven't identified a witness who could do that for us, and I think they're talking about hearsay which they obviously won't be able to prove, and it tends to suggest things to the jury which are going to be improper. It's extraneous matters that they will not be able to prove, Your Honor.

[PROSECUTOR]: It's in the sworn affidavit that's been furnished to them.

THE COURT: Well, I will overrule the objection. Ladies and gentlemen, each attorney is entitled to make an opening statement as to what they think is their viewpoint of the case. What they say is not evidence. You'll be guided by the evidence as you hear it from the witness stand or any exhibits, if any, as come in.

\* \* \*

[PROSECUTOR]: In any event, ladies and gentlemen, the intelligence information gathered by Officer Rodney Price was compiled into a written format that is called a sworn affidavit, and the -

[DEFENSE COUNSEL]: I'm going to object to what's contained in the sworn affidavit, Your Honor, because it's obviously hearsay, and respectfully move the Court to prevent the testimony on that, because the hearsay affidavit is not admissible before the jury.

THE COURT: All right. Again, this is not testimony. This is the opening statement. And I will overrule the objection.

6. In fact, the statement of a confidential informant, when offered to establish probable cause, is not considered hearsay. The statement is not offered for its truth but to show why an officer sought, and a magistrate issued, a search warrant. See *Jones v. State,*

Appellant argues that the issue of "probable cause" was not before the jury and, therefore, that any later testimony concerning what the informant saw at appellant's residence would be inadmissible hearsay. *Hill v. State,* 817 S.W.2d 816 (Tex.App.—Eastland 1991, pet'n ref'd). At this point in the trial, however, the record reflects that the issue of "probable cause" was before the jury.[6] The prosecutor should not mention matters in his opening statement which would be inadmissible as evidence. Even if we were to agree that the comment referred to hearsay, statements normally considered hearsay are admissible to show probable cause when probable cause is in issue before the jury. *Murphy v. State,* 640 S.W.2d 297, 299 (Tex.Cr.App.1982). Here, the prosecutor was not injecting facts into his opening statement which were inadmissible per se. In light of our disposition of appellant's second point below, the trial court did not err in overruling appellant's objections to the State's opening statement.

Moreover, even if the court did err in overruling appellant's objection to the prosecutor's comments, that error was rendered harmless by the trial court's instruction to disregard. *Brockway v. State,* 853 S.W.2d 174, 176 (Tex.App.—Corpus Christi 1993, pet'n ref'd); *Sweaney v. State,* 632 S.W.2d 932, 935 (Tex.App.—Fort Worth 1982, no pet'n). To constitute reversible error, the prosecutor's comment in his opening statement has to be so egregious that its prejudicial effect cannot be cured by an instruction to disregard. See *Brockway v. State,* supra at 176. Here, the trial court instructed the jury twice that an opening statement was not evidence and that the jury was to be guided by the evidence to be introduced in the case.

843 S.W.2d 487, 499 (Tex.Cr.App.1992), *cert. den'd,* 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993); *Russell v. State,* 904 S.W.2d 191 (Tex.App.—Amarillo 1995, pet'n ref'd).

Any error was further cured when appellant let the magistrate's answer regarding a 72–hour time frame remain on the record and in front of the jury after the trial court sustained his objection and when appellant's own questions adopted the 72–hour time frame as true. *Stoker v. State*, 788 S.W.2d 1, 12 (Tex.Cr.App.1989). During the State's re-direct examination of the magistrate, the prosecutor asked whether the affidavit supporting the warrant stated that the informant was on appellant's premises within 72 hours of the warrant. The magistrate answered, "That's correct." The trial court sustained appellant's objection that anything from the affidavit was hearsay and not in evidence; however, appellant did not ask for an instruction to disregard the question and answer. Later, during his cross-examination of Officer Price, appellant twice asked questions referring to the 72–hour time frame contained in the affidavit.

We overrule appellant's first point of error.

### Hearsay Statements by Informant

▆▆ Appellant argues in his second point that the trial court erred by admitting hearsay statements of the confidential informant. Hearsay is admissible on the issue of probable cause to arrest, to search, or to show consent to search. Murphy v. State, supra; but see *McVickers v. State*, 874 S.W.2d 662, 666 (Tex.Cr.App.1993)(former TEX.R.CRIM. EVID. 1101(d)(4) made Rules of Evidence applicable to hearings on motions to suppress); see also *Campbell v. State*, 910 S.W.2d 475, 480 (Tex.Cr.App.1995) (*McVickers* and former Rule 1101(d)(4) only stand for the proposition that "the

officer(s) who obtained the evidence which is the subject of the suppression motion can testify as to the underlying reason(s) for engaging in the conduct which produced the evidence"). Hearsay is inadmissible, however, unless probable cause is in issue before the jury. *Smith v. State*, 574 S.W.2d 555 (Tex.Cr.App.1978); *Hill v. State*, supra.

Appellant bases this point on objections he made to Officer Price's testimony. The State asked Officer Price whether he had previously worked with the confidential informant, whether he knew the informant to be reliable and credible, whether he included a detailed description of the suspected premises in the affidavit supporting the warrant, whether he observed the suspected premises and appellant's activities to corroborate the informant's information, and whether he had included all this information in the supporting affidavit. Appellant made a hearsay objection to each of these questions, and the trial court overruled each objection.[7]

As noted above, appellant did not obtain a ruling on his motion to suppress prior to trial; consequently, the issue of probable cause was before the jury from the first moment of the trial. Appellant did not object to the fact that the magistrate testified before the jury concerning his probable cause determination and the issuance of a warrant. Appellant did not reurge his motion to suppress and did not request a hearing out of the jury's presence until Officer Price had already testified about using a confidential informant and obtaining a warrant supported by a proper affidavit. The issue of probable cause was before the jury, and the hearsay testimony of Officer Price was properly admitted over appellant's objection.[8] We overrule appellant's second point of error.

7. Appellant also refers under this point to the prosecutor's opening statement (as set forth under the first point) and to the magistrate's testimony. The opening statement is not evidence; therefore, a hearsay objection is not applicable. The trial court sustained appellant's only objection to the magistrate's testimony, but appellant did not request an instruction to disregard. Thus, we consider only the objections made to Officer Price's testimony.

8. Appellant's later request for a ruling by the trial court on probable cause removed the issue from the jury; however, this occurred

## Right of Confrontation Not Violated

 Appellant argues in his third point that the trial court erred by prohibiting him from cross-examining the State's witnesses about the reliability and credibility of the confidential informant. Appellant asserts that the trial court's actions deprived him of his right of confrontation under the sixth and fourteenth amendments to the United States Constitution. Any undue restriction of cross-examination can violate a defendant's sixth amendment rights. *Carroll v. State*, 916 S.W.2d 494 (Tex.Cr.App.1996)(error for trial court to restrict cross-examination of State's witness about his pending aggravated robbery charges); *Hurd v. State*, 725 S.W.2d 249 (Tex.Cr.App.1987)(error for trial court to restrict cross-examination of State's witness about his racial biases).

In the present case, however, the trial court restricted appellant's right to cross-examine the magistrate and various police officers about the credibility and reliability of the confidential informant. This case is distinguishable from *Carroll* and *Hurd* because those cases involved the cross-examination of a live witness in open court when that witness's testimony went to the merits of the case. The confidential informant in this case has no relevance to the merits, only to the issue of probable cause. Officer Price testified that he worked with the confidential informant in the past and that the informant had proven to be credible and reliable. The magistrate testified that he was satisfied with the contents of the affidavit, that he found probable cause, and that he issued a warrant. The trial court, looking at the affidavit, warrant, and return and hearing the testimony of Officer Price and the magistrate, found that probable cause existed for the warrant to issue. The relevance of the confidential informant ended there.

Most of the questions appellant attempted to ask the State's witnesses on cross-examination involved the time frame in which the informant was on the premises. The questions would not have proven that the informant was unreliable, not credible, biased, or prejudiced. Instead, they appear to be calculated to discover the identity of the informant which the State claimed as privileged under former TEX. R.CRIM.EVID. 508(a).

The trial court did not violate appellant's right to confront witnesses against him because the confidential informant did not testify against him. The informant merely provided the police a tip that appellant possessed illegal drugs on his premises. Appellant cross-examined the magistrate and Officer Price extensively, as well as other police officers who testified against him. Thus, we hold that appellant's right of confrontation under the sixth and fourteenth amendments was not abridged. We overrule appellant's third point of error.

## Identity of Informant

 Appellant argues in his fourth point of error that the trial court erred by restricting him from questioning the State's witnesses about whether the confidential informant could give testimony necessary to a determination of guilt or innocence. As noted above, the State claimed that the confidential informant's identity was privileged under former Rule 508(a). The trial court denied appellant's motion to discover the identity of the informant prior to trial and denied it again after the State rested. Appellant argues here that the identity of the informant was discoverable under the exception to the privilege found in Rule 508(c)(2) because the informant could provide testimony necessary to a fair determination of guilt or innocence.[9] Appellant cites *Bodin v. State*,

after the testimony of which appellant complains here.

9. Appellant does not complain about the trial court denying his motions to discover the

informant's identity, only about the trial court sustaining the State's objections to his cross-examinations of the State's witnesses.

807 S.W.2d 313 (Tex.Cr.App.1991), in support of this point.

*Bodin* is illustrative of the intent behind the former Rule 508(c)(2) exception. The defendant was convicted of possession of a controlled substance after the police executed a search warrant and found a "key box" containing methamphetamine in the defendant's pocket. The defendant claimed that the "key box" belonged to his friend James who had used drugs in the defendant's apartment and who had forgotten the "key box" when he left. The police obtained a warrant based on information from a confidential informant, and the defendant requested to discover whether James was the informant. The defendant argued that the identity of the informant, if the informant was James, would be material to establish an entrapment defense. The Court of Criminal Appeals agreed that the defendant had presented sufficient evidence for the trial court to hold an *in-camera* hearing on the issue, reversed the conviction, and remanded the case. *Bodin v. State*, supra at 319.

■■■■■ For an informant's identity to be discoverable, the informant's "potential testimony must significantly aid the defendant and mere conjecture or supposition about possible relevance is insufficient." *Bodin v. State*, supra at 318. In the present case, appellant argued in support of his motion to discover the informant's identity that the informant was "an agent of the government and was under the government's control" and that the informant's credibility was crucial to a determination of probable cause. Appellant posed questions to the State's witnesses seeking to discover the informant's identity. He did not elicit or attempt to elicit any testimony that tended to show that the informant could provide any material testimony concerning appellant's guilt or innocence. Nor is the fact that the government exercises any control or supervision over the informant enough to defeat the privilege.

This case is distinguishable from *Bodin;* nothing in the record indicates that appellant could have proven an affirmative defense, or even a lesser-included offense, if appellant had known the informant's identity. The trial court did not err by sustaining the State's objections to questions that sought to identify the informant. We overrule appellant's fourth point of error.

### Credibility of Informant

■■■ Appellant argues in his fifth point that the trial court erred by prohibiting him from cross-examining witnesses about the confidential informant's credibility because the State waived its privilege under former Rule 508(a) through "offensive use" of that privilege. Appellant cites one Texas criminal case and two federal criminal cases in support of his argument.

In *United States v. Ortland*, 109 F.3d 539 (9th Cir.1997), the defendant claimed during a pretrial meeting with prosecutors that he had relied on the advice of his attorney when he committed mail fraud. He then attempted to shield the content of that advice by invoking the attorney-client privilege. Although the *Ortland* court wrote that a privilege "may not be used as both a sword and a shield," it never reached the question of whether the defendant had impliedly waived the privilege because it held any error that occurred to be harmless. *United States v. Ortland*, supra at 543. *United States v. Bilzerian*, 926 F.2d 1285 (2nd Cir.1991), involved a situation similar to *Ortland.* The *Bilzerian* court, however, considered only whether the defendant's constitutional right to deny an essential element of the charged offense was prejudiced when the trial court refused to issue a blanket ruling to protect any attorney-client communications from being probed on cross-examination. *United States v. Bilzerian*, supra at 1292–93. The court of appeals never addressed the waiver issue because the defendant did not testify about any subject that might have waived the privilege and because the trial court never made an

evidentiary ruling on the privilege. *United States v. Bilzerian*, supra at 1293.

In *Washington v. State*, 822 S.W.2d 110 (Tex.App.—Waco 1991), *rev'd & rem'd*, 856 S.W.2d 184 (Tex.Cr.App.1993), the State sought the admissibility of a tape made by the defendant's investigator during an interview with a witness. The defendant had cross-examined the witness about the interview, and the court had admitted the entire tape into evidence. Although the court of appeals discussed the work product privilege and stated that it may be waived by offensive use (citing a civil case, *Owens–Corning Fiberglas Corporation v. Caldwell*, 818 S.W.2d 749 (Tex.1991), for that proposition), the court ultimately held that the defendant waived the privilege by making testimonial use of the product. *Washington v. State*, supra at 116–17. The court of appeals also based its decision on the rule of optional completeness found in former TEX.R.CRIM.EVID. 107. *Washington v. State*, supra at 117.[10]

The criminal cases that appellant cites do not deal with the waiver of a privilege by its offensive use. Even assuming that the doctrine of waiver by offensive use applies in a criminal prosecution, the State's use of the informant privilege here was not an "offensive use." The existence of the informant came into evidence because probable cause was in issue before the jury. Any testimony concerning the confidential informant related to Officer Price's applying for, and the magistrate's issuing, a warrant based on probable cause. Furthermore, the trial court in this case entered a written order before trial denying appellant discovery of the informant's identity.[11] As discussed above, appellant did not make the requisite showing to defeat the privilege with the exception in former Rule 508(c)(2). We overrule appellant's fifth point of error.

*Challenges for Cause*

 Appellant argues in his sixth through eighth points that the trial court erred in denying his challenges for cause against three jury panelists. The propriety of a trial court's denial of a challenge for cause must be determined by examining the whole record to determine whether a panelist was truly disqualified. We give deference to the determinations of the trial court "who was in a position to hear and see the potential juror." *Felder v. State*, 758 S.W.2d 760, 766 (Tex.Cr.App.1988). The fact that a panelist states that he could follow the trial court's instructions does not automatically qualify him when the record shows that he entertains strong convictions and that he states that he could not completely put those convictions aside when rendering a verdict. *Felder v. State*, supra.

The three challenged panelists gave equivocating answers when appellant questioned them about their ability not to consider his trial silence as evidence against him. The trial court questioned them all later, asking if they could follow the instruction not to consider appellant's silence as evidence of his guilt. The panelists indicated that they might wonder about why appellant did not testify but that they could follow the instruction and not consider his silence as evidence of his guilt. All three panelists gave an unequivocal "yes" answer to the question as to whether they could follow the instruction. The entire voir dire record, when considered with the trial court's questioning of these panelists, does not reveal the kind of strong convictions at issue in *Felder*. Neither does the record reveal the inability to take the oath

---

10. The Court of Criminal Appeals reversed the court of appeals in *Washington*, holding that the tape was protected by the work product privilege and that the rule of optional completeness did not apply. *Washington v. State*, supra.

11. We also note that appellant did not ask the court to reconsider his motion to discover the informant's identity until the State rested. The State does not question, and we express no opinion on, the timeliness of that request.

of a juror and to follow the trial court's instructions that was present in *Felder.* The trial court did not err in denying appellant's challenges for cause of the three panelists. We overrule appellant's sixth, seventh, and eighth points of error.

### Motion for Mistrial

Appellant argues in his ninth point that the trial court erred by denying his motion for mistrial after this statement by the prosecutor in his closing argument on punishment:

> The methamphetamine case....And you know that if you don't put him away, you can't be sure that he's not doing this again. I want to suggest to you in the methamphetamine case that you pick a punishment that starts in the middle and goes—if you want to give this man life in prison, you will make this district attorney real happy.

Asking the jury to render a verdict based on the prosecutor's or community's wishes or on any outside influence is improper. The trial court properly sustained appellant's objection that this was improper argument and granted appellant an instruction to disregard. *Cortez v. State,* 683 S.W.2d 419, 420 (Tex.Cr.App. 1984); *Villalobos v. State,* 568 S.W.2d 134 (Tex.Cr.App.1978); *Hughes v. State,* 563 S.W.2d 581, 587 (Tex.Cr.App.1978). In the present case, the trial court instructed the jury that "[t]he wishes about desires of the attorneys are not at issue." The prosecutor then rephrased his argument to point out that the evidence in the case supported a heavy sentence. The prosecutor continued after the trial court also denied appellant's motion for a mistrial:

> Ladies and gentlemen, the evidence in this case is what you base it on, and the evidence is appropriate to punish this man stiff. It's not just one offense, it's three. It's serious kinds of drugs, serious amounts of drugs. I want to suggest to you that it is appropriate from what you have heard, the evidence in this case, to fix the punishment at some-

where fifty to above in the methamphetamine dealing case. Stop his dope dealing. That's the only way you do it. It's the only way you tell other people not to do it. The evidence is appropriate for it.

A prosecutor may argue his opinions concerning the case as long as those opinions are based on evidence and do not constitute unsworn testimony. *Wolfe v. State,* 917 S.W.2d 270, 281 (Tex.Cr.App.1996).

The jury assessed punishment at confinement for 70 years in the methamphetamine case. Thus, we hold that any error was cured or was harmless. See *Wolfe v. State,* supra; *Hughes v. State,* supra. We overrule appellant's ninth point of error.

### This Court's Judgment

The judgment of the trial court is affirmed.